**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| SAYRE BERMAN,<br>  an individual,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN STERN,<br>  an individual and doing business as<br>  STEPHEN STERN MANAGEMENT,<br><br>MARK SCHULMAN,<br>  an individual,<br><br>GUITAR CENTER, INC.,<br>  a Delaware corporation<br><br>KMC MUSIC, INC.,<br>  a Connecticut corporation,<br><br>and<br><br>COASTAL MEDIA PUBLISHING LLC,<br>  a California limited liability company,<br><br>Defendants. | CASE NUMBER:_____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff SAYRE BERMAN ("Berman"), hereby files this Complaint for Copyright Infringement, Violation of the Digital Millennium Copyright Act, Unfair Competition and Deceptive and Unfair Trade Practices and sues Defendants STEPHEN STERN dba STEPHEN STERN MANAGEMENT; MARK SCHULMAN; GUITAR CENTER, INC.; KMC MUSIC, INC.; AND COASTAL MEDIA PUBLISHING LLC (each, the "Party" and collectively, the "Parties") and states:

**PRELIMINARY STATEMENT**

1.  This is an action for direct, vicarious and contributory infringement and removal of copyright management information under the Copyright Act, 17 U.S.C. §§ 106, 502, 503, 504,

1201, 1202, 1203; unfair competition under the Lanham Act, 15 U.S.C. § 1125 and Florida common law, and deceptive and unfair trade practices under Fla. Stat. §§ 501.201 *et. seq.*

## THE PARTIES

2. Plaintiff SAYRE BERMAN ("Berman") is an individual residing in Plantation, Florida.

3. Upon information and belief, Defendant STEPHEN M. STERN ("Stern") is an individual residing in California and operates at least in part under the name STEPHEN M. STERN MANAGEMENT.

4. Upon information and belief, Defendant MARK SCHULMAN ("Schulman") is an individual residing in California.

5. Upon information and belief, Defendant GUITAR CENTER, INC. ("Guitar Center") is a corporation organized under the laws of the State of Delaware.

6. Upon information and belief, Defendant Guitar Center conducts business throughout the country including through multiple stores located in Florida, and further including stores in Coconut Creek, Florida and South Miami, Florida.

7. Upon information and belief, Defendant Guitar Center offers products and services for sale and for consumption to consumers around the country, including in Broward County and Miami-Dade County, Florida.

8. Upon information and belief, Defendant Guitar Center operates a website located at the URL <www.guitarcenter.com> which is accessible throughout the country and the world, including Broward County and Miami-Dade County, Florida.

9. Upon information and belief, Defendant KMC MUSIC, INC. ("KMC Music") is a corporation organized under the laws of the state of Connecticut.

10. Upon information and belief, Defendant KMC Music operates websites located at

the URLs <http://www.gretschdrums.com> and <www.gibraltarhardware.com>, each of which is accessible throughout the country and the world, including Broward County and Miami-Dade County, Florida.

11. Upon information and belief, Defendant KMC Music offers its products and services for sale and for consumption to consumers around the country, including consumers located in Broward County and Miami-Dade County, Florida.

12. Upon information and belief, Defendant KMC Music offers products for sale in stores operated by Defendant Guitar Center around the country and the State of Florida, including stores in Coconut Creek, Florida and South Miami, Florida.

13. Upon information and belief, Defendant Coastal Media Publishing LLC ("Coastal Media") is a limited liability company organized under the laws of the state of California.

14. Upon information and belief, Coastal Media is the publisher of Music Insider Magazine ("Music Insider"), an online publication which claims to "provid[e] the music industry with the latest in online marketing information, techniques and tools to help them market and sell their music, products and services."

15. Upon information and belief, Defendant Coastal Media operates a website located at the URL <www.musicinsidermagazine.com> which is accessible throughout the country and the world, including Broward County and Miami-Dade County, Florida.

16. Upon information and belief, Defendant Coastal Media offers its products and services for sale and for consumption to consumers located around the country, including consumers located in Broward County and Miami-Dade County, Florida.

Case No. _____

## JURISDICTION

17. This Court has jurisdiction over this case under 28 U.S.C. § 1338(a) and (b), § 1367, and § 1400(a).

18. Personal jurisdiction is proper over Defendant Stern pursuant to Fla. Stat. § 48.193(1)(b) because Defendant Stern has "[c]ommitt[ed] a tortious act within this state".

19. Personal jurisdiction is proper over Defendant Schulman pursuant to Fla. Stat. § 48.193(1)(b) because Defendant Schulman has "[c]ommitt[ed] a tortious act within this state".

20. Personal jurisdiction is proper over Defendant Guitar Center pursuant to Fla. Stat. § 48.193(1)(a) and (b) because Defendant Guitar Center has "(a) [o]perat[ed], conduct[ed], engag[ed] in, or carr[ied] on a business or business venture in this state or ha[s] an office or agency in this state" and also "(b) [c]ommitt[ed] a tortious act within this state".

21. Personal jurisdiction is proper over Defendant KMC Music pursuant to Fla. Stat. § 48.193(1)(a) and (b) because Defendant KMC Music has "(a) [o]perat[ed], conduct[ed], engag[ed] in, or carr[ied] on a business or business venture in this state or ha[s] an office or agency in this state" and also "(b) [c]ommitt[ed] a tortious act within this state".

22. Personal jurisdiction is proper over Defendant Coastal Media pursuant to Fla. Stat. § 48.193(1)(b) because Defendant Coastal Media has "[c]ommitt[ed] a tortious act within this state".

## VENUE

23. Venue is properly laid in this District under 28 U.S.C. § 1391(b) and (c because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

24.     Berman contacted Schulman in early 2012 to request approval for a photo shoot to create imagery of Schulman (the "February 10 Photo Shoot").

25.     Upon arrival at the February 10 Photo Shoot at The Sunrise Theater in Fort Pierce, Florida, Schulman discussed with Berman his need for images for a particular usage for banners to be used at his booth at an upcoming college drum clinic (the "Tude Dude Banner").

26.     During the February 10 Photo Shoot, Berman created a series of color photographs of Schulman (the "Works").

27.     Among the Works is included a particular photograph depicting Schulman playing drums and labeled by Berman as "Foreigner 892.jpg" (the "Infringed Work").

28.     On February 11, 2012, Berman provided Schulman with a link to an online proof page that included thumbnail images of a selection of the Works created at the February 10 Photo Shoot.

29.     The selection of the Works at the online proof page included a low resolution ("lo res") image of the Infringed Work.

30.     Schulman in conjunction with Stern informed Berman that they were interested in the Infringed Work to be used on the Tude Dude Banner.

31.     Berman informed Schulman that she would allow use of the Infringed Work for the singular purpose of the Tude Dude Banner and to be used solely at the single college drum clinic.

32.     Berman specifically informed Schulman that uses of the Works, including the Infringed Work, for any purpose other than the Tude Dude Banner would require a licensing fee.

33.     Stern asked if Berman would provide a high resolution image of the Infringed Work to ensure it would layout well on the Tude Dude Banner.

34.     In response, on or about February 12, 2012, Berman provided a "hi res" (high

resolution) image of the Infringed Work to Stern. The hi res image provided to Stern on or about February 12, 2012 included Berman's copyright notice (©2012 SAYRE BERMAN) across the center of the image (the "Marked Infringed Work"). A copy of the Marked Infringed Work as it was provided to Stern on or about February 12, 2012 is attached as Exhibit A.

35. Following receipt of the Marked Infringed Work, on February 12, 2012 Stern circulated the file to non-party Marea-Laina Bertolini who was designing the Tude Dude Banner.

36. In the email to Ms. Bertolini, Stern cc'd Berman and requested that Berman provide a file containing the Infringed Work but leaving off the "photo credit."

37. Stern further informed Berman in the email to Ms. Bertolini that he was working with Defendant Guitar Center on a "promo for future clinics" and that he would "need to get a photo for that…but that [he would] wait to order until after [he] discussed with [Schulman] which one [they] shuld [sic] use."

38. Berman thereafter responded to Stern that the "photo credit" was in fact Berman's watermark.

39. Berman's watermark on the Marked Infringed Work contains Berman's copyright notice.

40. Berman further responded that she was "not crazy about the idea of lots of hi res images floating around out there in cyber space, unauthorized use always concerns [her]."

41. Stern thereafter responded to Berman that "[w]e are just planning to use this pic [the Infringed Work] for the particular purpose of the 'Tude Dude promo. We don't plan to circulate hi res image [sic] all-over cyber space."

42. In response, and in reliance on Stern's representations, Berman provided an unmarked hi res image of the Infringed Work (the "Unmarked Infringed Work") to Ms. Bertolini.

43. Berman did not receive any further communication from Stern, Schulman or Ms.

6

Bertolini regarding any of the Works including the Unmarked Infringed Work or the Marked Infringed Work, or the Tude Dude Banner.

44. On or about November 2012, Berman was on the website at the URL <www.gretschdrums.com> and observed while there a promotion for a drum clinic that had been held earlier that year on April 24, 2012 at the Guitar Center store in San Jose, California featuring Schulman (the "April 24 Drum Clinic").

45. The promotion included a copy of the Marked Infringed Work.

46. Berman searched further and found several websites that included the promotion for the April 24 Drum Clinic.

47. A true and correct copy of the promotion for the April 24 Drum Clinic as carried on the website <www.gretschdrums.com> is attached hereto as Exhibit B.

48. A true and correct copy of the promotion for the April 24 Drum Clinic as carried on the Facebook page of Guitar Center is attached hereto as Exhibit C.

49. A true and correct copy of the promotion for the April 24 Drum Clinic as carried on the website <www.gibraltarhardware.com> is attached hereto as Exhibit D.

50. A true and correct copy of the promotion for the April 24 Drum Clinic as tweeted by Guitar Center is attached hereto as Exhibit E.

51. Berman further found that the Marked Infringed Work had also been used for promotion of a drum clinic that had been previously held on April 4, 2012 at the Guitar Center store in Hollywood, California (the "April 4 Drum Clinic").

52. Berman searched further and found several websites that included the promotion for the April 4 Drum Clinic.

53. A true and correct copy of the promotion for the April 4 Drum Clinic as carried on the website <www.drummercafe.com> is attached hereto as Exhibit F.

54. A true and correct copy of the promotion for the April 4 Drum Clinic as carried on the Facebook page of Guitar Center is attached hereto as Exhibit G.

55. A true and correct copy of the promotion for the April 4 Drum Clinic as carried on the website <www.twylah.com> is attached hereto as Exhibit H.

56. Unbeknownst to Berman at the time, upon information and belief, on or about February 10, 2012 Stern communicated with a Ryan Carr at the email address <rcarr@guitarcenter.com> with a cc to a Kim Graham at the email address <kim.graham@kmcmusic.com> in which Stern confirmed that the February 10 Photo Shoot was taking place.

57. In the email to Carr and Graham, Stern promised to request a "proof and then a print" to meet Carr's "deadline" of the following week.

58. Upon information and belief, Ms. Graham at the time was Artist Relations manager of Defendant KMC Music for its Gibraltar Hardware line of products.

59. Upon information and belief, the subject of the February 10, 2012 email from Stern to Carr is "Mark Schulman GC Clinic April 4."

60. Upon information and belief, thereafter Carr confirmed to Stern by email that he needed a "hi res" photo.

61. Upon information and belief, thereafter on February 14, 2012 Stern sent Carr with a cc to Graham an email with four (4) attached files for use in the promotion of the "GC drum clinic April 4."

62. The four (4) attached files to the February 14, 2012 email included a file with the Marked Infringed Work.

63. The file attached to Stern's February 14 email to Carr and Graham containing the Marked Infringed Work was named "Marksayrepoint.jpg." A true and correct copy of the file titled

Marksayrepoint.jpg is attached hereto as Exhibit I.

64. Upon information and belief, Stern provided the Marked Infringed Work to the representatives of Guitar Center and KMC Music/Gibraltar with the knowledge that the Infringed Work would be used for promotion of the April 4 Drum Clinic.

65. Berman located a reproduction of the Tude Dude Banner as believed to be used at the college drum clinic. A true and correct copy of a photograph showing the Tude Dude Banner as displayed at the college drum clinic is attached as Exhibit J.

66. Also seen in the photograph of the college drum clinic is a poster other than the Tude Dude Banner that features the Infringed Work (the "NIRVANA JAM Poster").

67. Berman located a reproduction of the Unmarked Infringed Work used both as the "cover" of and as a photograph in a feature story of the March 2012 edition of the online magazine "Music Insider Magazine" published by Defendant Coastal Media at the website located at the URL <www.musicinsidermagazine.com>. A true and correct copy of the cover of the March 2012 Music Insider Magazine is attached hereto as Exhibit K.

68. The Infringed Work contains substantial material wholly original with Berman, and constitutes copyrightable subject matter under the copyright laws of the United States of America.

69. It was understood and agreed to by Stern and Schulman that the authorship and copyright ownership, and all copyright rights, title and interest in the Infringed Work, would remain exclusively with Berman.

70. The April 24 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed in the United States and around the world at the website <www.guitarcenter.com>, owned and operated by Guitar Center.

71. The April 24 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed in the United States and around the world on the Facebook

page of Guitar Center.

72. The April 24 Drum Clinic promotion which features the Infringed Work was reproduced and publicly displayed in the United States and around the world on the Twitter® page of Guitar Center.

73. The April 24 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed, and continues to be reproduced and publicly displayed, in the United States and around the world at the website <www.gretschdrums.com>, owned and operated by KMC Music.

74. The April 24 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed, and continues to be reproduced and publicly displayed, in the United States and around the world at the website <www.gibraltarhardware.com>, owned and operated by KMC Music.

75. The April 4 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed in the United States and around the world on the website <www.drummercafe.com>.

76. The April 4 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed in the United States and around the world on the Facebook page of Guitar Center.

77. The April 4 Drum Clinic promotion which features the Infringed Work has been reproduced and publicly displayed in the United States and around the world on the website <www.twylah.com>.

78. The NIRVANA JAM Poster which features the Infringed Work has been reproduced and publicly displayed by Stern and Schulman in the United States and around the world on Facebook.

79. The Unmarked Infringed Work has been reproduced and publicly displayed in the United States and around the world by Coastal Media at the website <www.musicinsidermagazine.com>.

80. Guitar Center has never paid Berman a royalty to reproduce, public display and make a derivative work of the Infringed Work in the April 4 and April 24 Drum Clinic promotions.

81. KMC Music has never paid Berman a royalty for a license to reproduce, public display and make a derivative work of the Infringed Work in the April 4 and April 24 Drum Clinic promotions.

82. Stern and Schulman have never paid Berman a royalty for a license to reproduce, public display and make a derivative work of the Infringed Work in the NIRVANA JAM Poster.

83. Coastal Media has never paid Berman a royalty for a license to reproduce, public display and make a derivative work of the Infringed Work in the March 2012 Music Insider Magazine.

84. Upon information and belief, Stern provided the hi res file of the Marked Infringed Work containing Berman's copyright notice to Guitar Center and KMC Music.

85. Upon information and belief, Guitar Center and KMC Music deliberately removed and altered Berman's copyright notice in the Marked Infringed Work prior to reproducing and displaying the Marked Infringed Work in the April 4 and April 24 Drum Clinic promotions.

86. Reproduction and public display of the Marked Infringed Work in the April 4 and 24 Drum Clinic promotions was not authorized by Berman.

87. Removal and alteration of Berman's copyright notice from the Marked Infringed Work by Guitar Center and KMC Music was not authorized by Berman.

88. Upon information and belief, Stern and Schulman deliberately removed and altered Berman's copyright notice in the Marked Infringed Work prior to reproducing and displaying the

Infringed Work in the NIRVANA JAM Poster.

89. Reproduction and public display of the Infringed Work in the NIRVANA JAM Poster was not authorized by Berman.

90. Upon information and belief, Stern provided the Unmarked Infringed Work to Coastal Media with the knowledge that the Infringed Work would be used for the March 2012 Music Insider Magazine cover and feature story.

91. Berman sent Coastal Media an invoice requesting payment for a license to use the Infringed Work in the March 2012 Music Insider Magazine cover and feature story.

92. Coastal Media has never paid Berman a royalty for reproduction and public display of the Infringed Work in the March 2012 Music Insider Magazine cover and feature story.

93. Reproduction and public display of the Infringed Work in the March 2012 Music Insider Magazine cover and feature story was not authorized by Berman.

94. On or about December 2012, Berman discussed the unauthorized uses of the Infringed Work on the April 4 and April 24 Drum Clinic promotions with Schulman.

95. Upon information and belief, no photo credit was given to Berman on the April 4 or April 24 Drum Clinic promotions.

96. Berman has complied with all registration and deposit requirements of the federal copyright laws, and has obtained copyright registration the Infringed Work under Certificate of Registration No. VA 1-842-017, effective January 1, 2013. A copy of the Certificate of registration is attached hereto as Exhibit L.

**COUNT I**
**Title 17 U.S.C.**
**COPYRIGHT INFRINGEMENT**
**(Direct, Contributory and Vicarious)**
**(17 U.S.C. § 106)**
(Plaintiff Berman against all Defendants)

97. Plaintiff Berman adopts and realleges paragraphs 1 - 96 inclusive, as though fully

set forth herein.

98. Defendants Guitar Center and KMC Music infringed Berman's registered copyright in the Infringed Work by reproducing and publicly displaying the posters promoting the April 4 Drum Clinic and the April 24 Drum Clinic in violation of Berman's exclusive rights in the Infringed Work under 17 U.S.C. § 106.

99. Defendant Coastal Media infringed Berman's registered copyright in the Infringed Work by reproducing and publicly displaying the Music Insider Cover and feature story in the March 2012 edition in violation of Berman's exclusive rights in the Infringed Work under 17 U.S.C. § 106.

100. The natural, probable and foreseeable consequence of Defendants' wrongful conduct is to deprive, and continues to deprive, Berman of: (i) the benefits of her intellectual property; and (ii) the licensing, marketing and promoting Berman's related services.

101. Defendants Guitar Center and KMC Music knew or should have known that reproduction and publicly display of the Infringed Work in the posters promoting the April 4 Drum Clinic and the April 24 Drum Clinic would directly infringe Berman's copyrights under 17 U.S.C. § 106.

102. Defendant Coastal Media knew or should have known that reproduction and publicly display of the Infringed Work in the Music Insider Cover would directly infringe Berman's copyrights under 17 U.S.C. § 106.

103. Defendants Stern and Schulman received, and continue to receive, a direct financial benefit from infringement of Berman's exclusive rights in the Infringed Work by Defendants Guitar Center, KMC Music and Coastal Media.

104. Defendants Stern and Schulman were aware of, and had the ability to control, the directly infringing activity of Defendants Guitar Center, KMC Music and Coastal Media.

105. By distributing the Infringed Work to Defendants Guitar Center, KMC Music and Coastal Media which resulted in direct infringement, Defendants Stern and Schulman are vicarious and/or contributory infringers of Berman's copyrights.

106. Defendants' acts of willful, intentional, deliberate, and malicious infringement have damaged and continue to damage, Berman.

107. Defendants' acts of infringement have and continue to damage Berman in a manner that is irreparable in nature.

108. Berman is without an adequate remedy at law.

## COUNT II
## REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION
## (17 U.S.C. § 1202, Digital Millennium Copyright Act)
(Plaintiff Berman against Defendants Stern, Schulman, Guitar Center and KMC Music)

109. Plaintiff Berman adopts and realleges paragraphs 1 - 96 inclusive, as though fully set forth herein.

110. Defendants Stern and Schulman knew or that Berman was the true author of the Infringed Work.

111. Upon information and belief, Stern and Schulman submitted the Marked Infringed Work to Defendants Guitar Center and KMC Music specifically for use in promotions for the April 4 Drum Clinic and the April 24 Drum Clinic.

112. Upon information and belief, the Marked Infringed Work as provided by Stern and Schulman to Guitar Center and KMC Music contained a copyright notice attributing copyright ownership and name of the author to Berman.

113. Defendants Guitar Center and KMC Music knew or had reason to know that Berman was the true author of the Marked Infringed Work.

114. Pursuant to 17 U.S.C. § 1202(c) of the Digital Millennium Copyright Act of 1998 ("DMCA") the copyright notice in the Marked Infringed Work so conveyed is deemed to be and

constitutes "copyright management information".

115.    Each of Defendants Stern, Schulman, Guitar Center and KMC Music knew that the Marked Infringed Work contained Berman's copyright notice.

116.    With the knowledge of each of Defendants Stern, Schulman, Guitar Center and KMC Music, the Marked Infringed Work was reproduced in promotions for the April 4 Drum Clinic and the April 24 Drum Clinic without full and accurate reproduction of Berman's copyright notice.

117.    In addition to removing and altering copyright management information from the Marked Infringed Work, each of Defendants Stern, Schulman, Guitar Center and KMC Music publicly displayed, the Marked Infringed Work knowing that the copyright management information had been altered and/or removed without the authority of the copyright owner, Berman, or the law.

118.    At all times, each of Defendants Stern, Schulman, Guitar Center and KMC Music, in doing the acts and things complained of herein, intended to induce, enable, facilitate or conceal an infringement and violation of Berman's copyright attribution, integrity and ownership rights under Title 17 U.S.C. § § 1202(b), and otherwise against unauthorized copying, dissemination and display of her Works, inter alia, under Title 17 U.S.C. § 501.

119.    Each of Defendants Stern, Schulman, Guitar Center and KMC Music have violated the Digital Millennium Copyright Act, and Berman's rights hereunder, and she has been caused to and has thereby, suffered and sustained substantial financial damage and irreparable harm, for which a remedy at law is inadequate.

**COUNT III**
**UNFAIR COMPETITION**
**(15 U.S .C. § 1125(a) and Florida Common Law)**
(Plaintiff Berman against all Defendants)

120.    Plaintiff Berman adopts and realleges paragraphs 1 - 96 inclusive, as though fully set forth herein.

121. Defendants knew that Berman was the true and lawful author and copyright owner of the Infringing Work.

122. Notwithstanding, however, at all times relevant, the infringing and otherwise unlawful reproductions of the Infringed Work deliberately omitted or removed Berman's name.

123. In addition, Defendants, by their deliberate reproduction of the Infringed Work without Berman's permission, evidenced their intentions to do and/or omit to do one or more of the following, inter alia: (i) to alter and/or modify the Infringed Work without Berman's input or permission, (ii) to reproduce and publish the Infringed Work without any editorial participation from Berman so that the Infringing Uses do not reflect her vision in connection with the selection or manner of use(s) of Berman's own photographic works, and (iii) to tout and/or seek to associate the Infringed Work of Berman, its source and/or authorship, and the goodwill hereof, with the trade names, trademarks, and designations of Defendants without the permission, consent, authorization or approval of Berman.

124. In addition, Defendants, either intentionally and/or recklessly, caused the Infringed Work to be widely disseminated in derogation of their lawful duties to ensure that Berman's name and goodwill be associated with the Infringing Work, including the purposes for which the Infringing Work was originally licensed for use.

125. Consequently, the Infringing Works purport to suggest, inter alia, (i) that the lawful copyright owner Berman has endorsed and approved of such selection and use(s) of the Infringed Work, or (ii) that Defendants and/or some other person or firm is the creator and copyright owner of the Infringed Work, when in fact those suggestions, impressions and identifications are not true.

126. Defendants' wrongful use and/or misuse of Berman's name, identity and services, and misuse of her entitlement to receive proper photographic authorship and/or source attribution

credit, are uses in commerce, and constitute acts of unfair competition and an infringement of Berman's common law and statutory rights in her name, identity and services.

127. Defendants have engaged, and/or have threatened to continue to engage, in the aforementioned conduct with the intent to deceive the purchasing public and others, or otherwise having the likelihood that such deception will be the result.

128. Defendants' acts have been, and are threatened to be, committed with the intent to pass off Defendants' infringing uses, and in particular the Infringed Work, as being those of Defendants and/or as being dissociated from Berman, and all to the deception of the purchasing public and others in violation of the Lanham Act, § 43(a).

129. Defendants' acts, practices and conduct constitute unfair competition, false or misleading designation, description or representation, false advertising, and/or unfair and deceptive trade practices in that they are likely to cause confusion and mistake by the purchasing public and/or others with respect to the professional services of Berman, all in violation of the Lanham Act, § 43(a).

130. The false and misleading designations and impressions have caused, and are likely to continue to cause, Berman irreparable harm and economic injury, for which a remedy at law is inadequate.

**COUNT IV**
**Florida Deceptive and Unfair Trade Practices**
**(Florida Statute §§ 501.201 - 501.213)**
(Plaintiff Berman against all Defendants)

131. Plaintiff Berman adopts and realleges paragraphs 1 - 96 inclusive, as though fully set forth herein.

132. Defendants have unlawfully used intellectual property belonging to Berman, including unauthorized use of Berman's copyrighted works, to obtain competitive advantage for their own services in the market.

133. Defendants Stern, Schulman, Guitar Center and KMC Music also removed source identifying information and copyright notices from Berman's intellectual property to pass it off as their own.

134. Defendants' actions constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute § 501.204.

135. Defendants have willfully undertaken these unlawful acts, as under Florida Statute § 501.204, and knew or should have known that such uses or practices were unlawful.

136. Berman has been damaged by Defendants' unlawful actions.

137. Plaintiff has no adequate remedy at law, and the aforesaid false and misleading descriptions and misrepresentations have caused, and are likely to continue to cause, Berman economic injury and irreparable harm.

WHEREFORE, Plaintiff, SAYRE BERMAN, prays for findings of copyright infringement, violations of the Digital Millennium Copyright Act, unfair competition and deceptive and unfair trade practices, and judgment in her favor and against Defendants, and each of them jointly and severally, as follows:

A. That Defendants be required to deliver up to Berman or destroy all copies of the Infringed Work, in all media and versions, and all print media, and electronic and digital files, embodying the copyrighted photographic Work(s), including all printed and electronic versions and other materials embodying or reproducing the Infringed Work;

B. That Defendants Stern, Schulman, Guitar Center and KMC Music each be required to pay, at Berman's election, actual damages and the Defendants' profits, or statutory damages of at least $25,000.00 for each violation of the Digital Millennium Copyright Act;

C. That Defendants Stern, Schulman, Guitar Center, KMC Music and Coastal Media be

required to pay, at Berman's election, actual damages and the Defendants' profits, or statutory damages of at least $30,000.00 for each violation of the Copyright Act;

D. That such damages otherwise assessed be increased if infringements and wrongful acts are found to be committed willfully;

E. That exemplary and/or punitive damages be assessed if infringements and acts of unfair competition, and other wrongful acts, including but not limited to deceptive business practices, are found to be committed knowingly;

F. That the Court grant such other and further relief as is reasonable to remedy Defendants' wrongful acts by any means, either at law or in equity, including but not limited to injunction, impounding and reasonable disposition of all infringing articles; and

G. Reasonable attorney fees and Berman's costs, plus interest, under the Copyright Act §§ 505 and 1203 and Florida Statute § 501.2105.

JURY TRIAL DEMANDED

Respectfully Submitted,

/s/ Nancy J. Flint
Nancy J. Flint, Esq., FBN 164623
NANCY J. FLINT, ATTORNEY AT LAW, P.A.
1844 N. Nob Hill Road, #424
Plantation, Florida 33322
Tel.:   (954) 812-0660
Fax:   (866) 517-9150
Email:  flintiplaw@att.net

Attorney for Plaintiff SAYRE BERMAN